## Barry's Appeal.[2]

The relationship of aunt and nephew creates no obligation or presumption of intention on the part of the latter to support the former gratuitously.

(Decided February 8, 1886.)

Appeal from a decree of the Orphans' Court of Philadelphia County allowing a claim against a decedent's estate.   Affirmed.

[1]NOTE.—To work a conversion of real estate there must be a positive direction to sell in the will, or an absolute necessity to sell to execute it, or such a blending of real and personal estate by the testator in his will as clearly to show that he intended to create a fund out of both his real and personal estate, and to bequeath the said fund as money.   Hunt's Appeal, 105 Pa. 128; Keim's Estate, 201 Pa. 609, 51 Atl. 337; Rauch's Estate, 21 Pa. Super. Ct. 60.

[2]Cited in Fox's Estate, 3 Pa. Co. Ct. 258, 43 Phila. Leg. Int. 498; Bugh's Estate, 23 Pa. Co. Ct. 660, 9 Pa. Dist. R. 276; and in note to Lindsey's Appeal, 1 Monaghan (Pa.) 418.

NOTE.—There is no presumption rebutting the implication of a contract to pay for services rendered a decedent when the relationship is not that of

Julia Ready died March 5, 1883, intestate, and without issue, leaving as her next of kin a brother, Maurice Barry.

At the audit of the administrator's account Thomas Barry filed a claim to recover for boarding and nursing decedent from May 10, 1878, to March 5, 1883. Barry was a nephew of decedent, and lived in Philadelphia. Prior to May, 1878, Julia Ready had lived in Buffalo, but at that time she went to live with claimant.

Following is the opinion of the court below:

PENROSE, J.: The relationship between the parties, while it is a fact to be considered in the determination of the question, was not one which of itself would give rise to a presumption of gratuitous maintenance. Smith v. Milligan, 43 Pa. 109. That the decedent became an inmate of the exceptant's house at her own request; that board was furnished to her during a period of five years immediately preceding her death; that no payments were made by her; that the exceptant was a laboring man, dependent for support upon his daily wages, and that the decedent informed him when she first went to reside with him that she was the owner of a considerable sum of money, are facts shown by the adjudication, and not in dispute. The law implies a promise to pay for services rendered upon request, and still more for provisions furnished. The implication may, however, be rebutted by any proof that shows an intention to give and receive without compensation. The question always is, as was said in Smith v. Milligan, 43 Pa. 109: Was payment contemplated by the parties? Of course, there are many cases in which the conduct of the parties is such as to show that they were not dealing with each other as debtor and creditor, but this is simply a matter affecting the proof, and not the general principle.

A circumstance usually of great importance is the omission, during the course of a long period, to make any demand for pay-

parent and child. Other determinations in line with Barry's Appeal, where the relationship was that of uncle or aunt, are to be found in Re Eckert, 2 Pearson (Pa.) 476; Mewes v. Parke, 1 Chester Co. Rep. 532; Spackman's Appeal, 16 W. N. C. 79; Armstrong's Estate, 16 Phila. 353; Ranninger's Appeal, 118 Pa. 20, 12 Atl. 511; Michaels's Estate, 5 Pa. Co. Ct. 321. But a contract to pay must be shown as in other cases. Hunt's Estate, 15 Phila. 511; Brown's Estate, 6 Pa. Co. Ct. 428; Lafferty's Estate, 2 Pa. Dist. R. 205, 13 Pa. Co. Ct. 82; Enoch's Estate, 3 Phila. 147.

ment. In many cases this will be sufficient to negative the idea of contract, express or implied; but it will not always have this effect. In the case now under consideration there was a manifest reason for making no claim while the decedent lived. She was old and childless, and, as already stated, the owner of a sum sufficient to cover any amount which would become due for board while she lived; and this fact she at once communicated to the exceptant. He was, so far as the evidence shows, her only relative in this country, and there was naturally an expectation on his part that she would, at her death, leave her estate to him or to his family. That this expectation was not without warrant, is proved by her declarations shortly before her death.

It is true, where services are rendered without request and purely in the hope that the party receiving them will be induced thereby to make compensation by legacy, no action will lie if the legacy be not left. The reason is clear; the decedent has entered into no compact. But where there has been a request for the services, the case is entirely different, and it is then immaterial that the party rendering them expected the compensation to take the form of a legacy. Addison, Contr. 52; Roberts v. Swift, 1 Yeates, 209, 1 Am. Dec. 295; Snyder v. Castor, 4 Yeates, 353; Thompson v. Stevens, 71 Pa. 161; Heathcote's Estate, 41 Phila. Leg. Int. 438.

In Baxter v. Gray, 4 Scott N. R. 374, where a surgeon had for several years bestowed medical attendance upon a lady, under the expectation that she would compensate him by a legacy at her death, and she died leaving him nothing, it was held that he was entitled to a reasonable compensation. "If," said TINDAL, Ch. J., "the evidence has shown that the work and labor in this case had been done upon an understanding that the plaintiff was to make no charge, but should receive a legacy on the death of Mrs. Bostock that would have amounted to an agreement that the remuneration for the plaintiff's services should depend solely upon her will; but no such understanding was proved. The plaintiff probably hoped and expected to receive a legacy, but, this hope failing, I see no reason why he should not be remitted to his legal right." Our own cases cited above are to the same effect.

In Dougherty v. Whitehead, 31 Mo. 255, it was said: "Where one man at the request of another performs beneficial services for him, unless it is agreed or can be so inferred from the cir-

cumstances that the services were to be rendered without compensation, the law, in the absence of any express contract, will imply a promise on the part of him for whom the services were rendered to pay for them what they are reasonably worth;" and in such case the burden of proving the gratuitous character of the services is always upon the defendant.

Of course, if the claim is delayed for more than six years, it will be barred by the statute of limitations.

That claims of this kind are to be rigidly scrutinized is true. But scrutiny does not imply absolute exclusion, and, as was said in Miller's Appeal, 100 Pa. 573, 45 Am. Rep. 394: A meritorious claim ought not to be defeated by application of any principle found necessary for the protection of estates of decedents from false demands.

No question is made as to the reasonableness of the amount asked for board; and as, for the reasons stated, we think the claim should be allowed, the exceptions sustained, and the balance shown by the account, less the allowance made by the adjudication, $20, is awarded to him on account of his said claim.

Maurice Barry appealed from the decree entered in conformity with this opinion.

*Francis Rawle* (Philadelphia) and *Walter George Smith* for Maurice Barry, appellant.

*Joseph L. Tull* for Thomas Barry, appellee.

PER CURIAM:

This is not a case of services having been voluntarily rendered without request. They were specifically rendered, on request and under circumstances evincing an intention to pay for them; not to pay for them at any stated period during the life of Julia Ready, but to discharge the whole obligation on her death out of the property she had and expected to leave. No such relation existed between her and the appellee as to create an implied obligation of intention on his part to support her gratuitously. The extraneous facts clearly import an obligation to pay.

Decree affirmed and appeal dismissed at the costs of the appellant.